**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 12, 2023**

# In the Court of Appeals of Georgia

A22A1550. WILLIAMS et al. v. HARVEY et al.

DILLARD, Presiding Judge.

The Sons of Confederate Veterans[1] appeal from the trial court's grant of a motion to dismiss in favor of the City of Brunswick.[2] Specifically, the Sons of

---

[1] For ease of reference, we refer to the appellants collectively as the "Sons of Confederate Veterans." The appellants are Bennie Williams, individually and as commander of the Thomas Marsh Forman Camp #485 Sons of Confederate Veterans; James Wendell Harrell; William S. Smith, Sr.; Richard A Watson; and G. R. Madray, individually and as the Thomas Marsh Forman #485 Sons of Confederate Veterans; and the Georgia Division of the Sons of Confederate Veterans.

[2] For ease of reference, we refer to the appellees collectively as the "City of Brunswick" or the "City." The appellees are Cornell Harvey, individually and in his official capacity as Mayor of Brunswick, Georgia; Felicia Harris and Julie T. Martin, individually and in their official capacities as city commissioners for the City of Brunswick; and the City of Brunswick, Georgia.

Confederate Veterans argue the trial court erred in dismissing their action against the City on the ground that they lacked standing. For the reasons noted *infra*, we affirm.

On appeal from a motion to dismiss, we review a trial court's grant of such motion *de novo*.[3] In doing so, we construe the pleadings and all reasonable inferences in the light most favorable to the nonmovants, resolving all doubts in their favor.[4] So viewed, the record shows that on December 12, 2021, the Sons of Confederate Veterans filed a complaint for damages and injunctive relief against the City on the ground that the City's vote to remove a Confederate monument was done in violation of OCGA § 50-3-1. And within that complaint, they recited "evidence of legal standing,"[5] which included that members hold services at the monument, invested

---

[3] *See Stewart v. Johnson*, 358 Ga. App. 813, 818 (4) (856 SE2d 401) (2021).

[4] *See N. Walhalla Props., LLC v. Kennestone Gates Condo. Ass'n, Inc.*, 358 Ga. App. 272, 272 (855 SE2d 35) (2021).

[5] *See Sons of Confederate Veterans v. Henry Cnty. Bd. of Commissioners*, __ Ga. __, __ (2) (a) (880 SE2d 168, 174 (2) (a)) (2022) (noting that "[s]tanding is a jurisdictional prerequisite to a plaintiff's right to sue," and "[a] plaintiff with standing is necessary to invoke a court's judicial power to resolve a dispute, and the power of Georgia courts—as with any power possessed by a branch of state government—is conferred by our state constitution"); *Black Voters Matter Fund, Inc. v. Kemp*, 313 Ga. 375, 380 (1) (870 SE2d 430) (2022) (noting that "[u]nder Georgia law, a trial court lacks subject matter jurisdiction to address the merits of a constitutional challenge to a statute brought by a party who does not have standing to bring that challenge"); *Stillwell v. Topa Ins. Co.*, 363 Ga. App. 126, 129 (1) (871 SE2d 8)

funds into the monument's restoration, had money on hand for future restoration of the monument, and received a quit claim deed and bill of sale for the monument from the local chapter of the United Daughters of the Confederacy.[6] The Sons of Confederate Veterans also alleged a violation of OCGA §§ 50-3-1 (b) (2) and (4) due to the City's threat to remove the monument, and they sought injunctive relief to prevent same.

The City moved to dismiss the action on the grounds that (1) there was no cause of action under OCGA § 50-3-1 because the monument is not publicly owned, and the statute only applies to publicly owned monuments, and (2) even if the City *does* own the monument, the Sons of Confederate Veterans lack standing to bring a claim under OCGA § 50-3-1 because they cannot allege a sufficiently concrete and

(2022) (noting that "in Georgia, constitutional standing—more precisely, Article VI standing—is a threshold jurisdictional issue to enforce traditional limits placed on a court's judicial power, as well as a question of subject-matter jurisdiction," and "the requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power and is inflexible and without exception," which means Georgia appellate courts "must consider whether a plaintiff has constitutional standing *nostra sponte*" (footnotes & punctuation omitted)).

[6] Despite receipt of a quit claim deed and bill of sale, the Sons of Confederate Veterans—at the hearing on the City's motion to dismiss—indicated they "never claimed we owned [the monument]" *and* that the City owns the monument—although they also suggested they might have a "potential ownership interest" in the monument.

3

particularized injury-in-fact. The trial court ultimately concluded the Sons of Confederate Veterans lacked standing, relying upon this Court's opinion in *Sons of Confederate Veterans v. Newton County Board of Commissioners*,[7] and dismissed the action. This appeal follows.

The Sons of Confederate Veterans contend the trial court erred in concluding they lack standing to pursue a claim under OCGA § 50-3-1 when the plain language of the statute grants broad standing rights to them as a group. We disagree.

OCGA § 50-3-1 (b) makes it unlawful for, *inter alia*, local government entities to remove certain historic monuments, including those honoring the Confederacy.[8] This Code section provides that "[n]o publicly owned monument erected, constructed, created, or maintained on the public property of this [S]tate or its agencies" or "on real property owned by an agency or the State of Georgia" may be "relocated, removed, concealed, obscured, or altered in any fashion," except for the

---

[7] 360 Ga. App. 798 (861 SE2d 653) (2021).

[8] *See* OCGA § 50-3-1 (b) (2) ("It shall be unlawful for any person, firm, corporation, or other entity to mutilate, deface, defile, or abuse contemptuously any publicly owned monument located, erected, constructed, created, or maintained on real property owned by an agency or the State of Georgia. No officer or agency shall remove or conceal from display any such monument for the purpose of preventing the visible display of the same. A violation of this paragraph shall constitute a misdemeanor.").

4

"preservation, protection, and interpretation" of such monuments.[9] Accordingly, this statute makes any person or entity that damages or removes such a monument without replacing it liable for treble damages for the cost of repairing or replacing the monument, attorney fees and court costs, as well as exemplary damages.[10]

Here, the Sons of Confederate Veterans claim they have standing to challenge the City's decision to remove the Confederate monument at issue because OCGA § 50-3-1 provides "*any* person, *group*, or legal entity *shall* have a *right to bring* a cause of action for *any* conduct prohibited."[11] But in the recent opinion of *Sons of Confederate Veterans v. Henry County Board of Commissioners* ("*Henry County*"),[12] the Supreme Court of Georgia affirmed in part and reversed in part this Court's decision in the *Newton County* case.[13] And highly relevant to *this* appeal, our Supreme Court affirmed this Court's conclusion that another chapter of the Sons of

---

[9] OCGA § 50-3-1 (b) (3).

[10] OCGA § 50-3-1 (b) (4).

[11] OCGA § 50-3-1 (b) (5) (emphasis supplied by appellants).

[12] __ Ga. App. __ (880 SE2d 168) (Ga. 2022).

[13] *Id*. at __ (2) (d) (i), (ii) (880 SE2d 188-89 (2) (d) (i), (ii)).

Confederate Veterans lacked standing under OCGA § 50-3-1, although it did so on different grounds.[14]

In *Henry County*, the Supreme Court of Georgia noted that the Sons of Confederate Veterans "did not allege that they are citizens, residents, or taxpayers of any county, much less the counties that they sued," and thus they had "set forth no allegations showing that they are community stakeholders, such that the duty created by OCGA § 50-3-1 is one that is owed to them."[15] Additionally, our Supreme Court concluded the Sons of Confederate Veterans failed to show associational standing by alleging the group "include[d] members that would have citizen/resident/taxpayer standing on their own."[16] On the other hand, the Supreme Court of Georgia did reverse this Court's conclusion that a plaintiff who sued in her *individual* capacity lacked standing when, "[b]y alleging that she [was] a citizen of Newton County, [she] . . . alleged a cognizable injury[.]"[17]

---

[14] *Id.* at __ (2) (d) (ii) (880 SE2d 188-89 (2) (d) (ii)).

[15] *Id.*

[16] *Id.*

[17] *Id.* at __ (2) (d) (i) (880 SE2d 187 (2) (d) (i)).

In this case, neither the individuals nor groups involved have alleged that they are citizens, residents, or taxpayers of the City of Brunswick.[18] In other words, none of the plaintiffs have alleged they are stakeholders to whom the City owes the duty created by OCGA § 50-3-1 (as identified by our Supreme Court in *Henry County*). As a result, under the standard established by the Supreme Court of Georgia in *Henry County*, neither the individuals nor the groups in this case have standing to challenge the City's decision under OCGA § 50-3-1, and the trial court did not err in granting the motion to dismiss.

Accordingly, for all these reasons, we affirm the trial court's judgment.

*Judgment affirmed. Mercier and Markle, JJ., concur.*

---

[18] To the extent the Sons of Confederate Veterans filed an amendment to exhibits attached to the original complaint two months *after* the trial court issued its order finding that they lacked standing, we have not considered that amendment. *See Sw. Health & Wellness, L.L.C. v. Work*, 282 Ga. App. 619, 627 (2) (d) (639 SE2d 570) (2006) (noting that amended complaint was not considered on appeal after concluding the amended complaint was filed after the trial court had already ruled); *see also Farrar v. Ga. Bd. of Examiners of Psychologists*, 280 Ga. App. 455, 456 (634 SE2d 79) (2006) ("[W]e are bound by law to consider only that evidence which the trial court had before it and which was in the record before the trial court when it made its ruling; we are not authorized to receive or consider evidence which the record shows was not before the trial court[.]" (punctuation omitted)).